Filed 4/12/22  In re R.S. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re R.S., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B314326 (Super. Ct. Nos. J072607, J072608, J072609) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, <br><br> Petitioner and Respondent, <br><br> v. <br><br> M.L., <br><br> Objector and Appellant. | |

M.L. (mother) appeals from the juvenile court's orders terminating parental rights to her children, R.S., L.S., and R.L., (the children) and selecting adoption as the permanent plan.

(Welf. & Inst. Code, § 366.26.)[1]  Mother contends the juvenile court erred in finding that the parental-benefit exception to adoption did not apply because the evidence demonstrated that the children would benefit from continuing the relationship and terminating parental rights would be detrimental to the children's well-being.  She contends that a legal guardianship or long-term foster care is the more appropriate permanent plan for the children.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother has three children, R.S. (born March 2015), L.S. (born April 2018), and R.L. (born July 2020).  At the time of R.L.'s birth, mother tested positive for marijuana and amphetamine.  R.L.'s umbilical cord also tested positive for marijuana, amphetamine, and methamphetamine.  Mother has a history of substance abuse, which continued throughout her pregnancy.  While pregnant with R.L., mother did not obtain any prenatal care, and R.L. was born prematurely at 31-weeks gestation.  After giving birth to R.L., mother left the hospital early against medical advice, did not provide any contact information, and told hospital staff she did not want to have contact with R.L. because she wanted the baby to be adopted.

On July 28, 2020, Ventura County Human Services Agency (agency) filed petitions asking the juvenile court to exert dependency jurisdiction over the children alleging that they were at substantial risk of harm due to mother's substance abuse issues and untreated mental health issues.

On August 26, 2020, following an uncontested jurisdiction and disposition hearing, the juvenile court found the allegations

_____

1  All further references are to the Welfare and Institutions Code.

contained in the petitions to be true, exerted dependency jurisdiction over the children and removed them from mother's custody.  The juvenile court ordered the agency to provide mother with reunification services.

Initially, the children experienced multiple placements. Immediately following her birth, R.L. was transferred to the neonatal intensive care unit where she remained for approximately one month.  R.S. and L.S. were briefly placed in a non-related resource home but were later placed with a non-related extended family member (NREFM).  However, after R.S. exhibited sexualized behavior, he was moved to a relative's home, along with L.S. and R.L.  After an incident between R.S. and the relative's daughter, R.S. was placed in Intensive Service Foster Care (ISFC) where he could receive a higher level of care due to his behavioral issues.  L.S. briefly returned to NREFM's home but was later placed with R.S. in the same ISFC home due to her specialized needs.  R.L. was eventually removed from the relative's home and placed in the NREFM's home.  The children have remained in their respective placements since September 2020 for R.S. and R.L., and November 2020 for L.S.

On March 8, 2021, the juvenile court conducted a six-month progress hearing.  By that time, mother had maintained regular visitation with the children.  She had attended 37 of the 39 twice-weekly scheduled visits.  At each visit, numerous extended family members were present, and the family members would hold the children and help tend to their needs.  Despite mother's consistent visits with the children, she had not completed any of the services that were part of her case plan.  She had not participated in substance counseling or parenting education.  She had not submitted a single drug test.  Mother had also not

remained in contact with the agency.  On this basis, the juvenile court found that mother's progress "toward alleviating or mitigating the causes necessitating placement ha[d] been nil," and proceeded to terminate mother's reunification services and set a permanency planning hearing.

On July 29, 2021, the juvenile court conducted a contested section 366.26 hearing.  After hearing testimony from the social worker and mother, the juvenile court found the children to be adoptable, found the parental-benefit exception did not apply, and terminated mother's parental rights over the children.

## DISCUSSION

Mother contends the juvenile court erred in finding that the parental-benefit exception to adoption did not apply.  She further contends a guardianship or long-term foster care, and not adoption, is the more appropriate permanent plan for the children.

"'At a permanency plan hearing, the [juvenile] court may order one of three alternatives: adoption, guardianship or long-term foster care.  [Citation.]  If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans.' [Citation.]" (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1224.)  If the juvenile court finds that the child is adoptable, it must terminate parental rights unless a statutory exception applies.  (§ 366.26, subd. (c)(1).)

### *Parental-Benefit Exception*

One exception to this rule is the parental-benefit exception, which allows the juvenile court to deny termination if it "finds a compelling reason for determining that termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would

4

benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)  To avoid termination of parental rights under this exception, a parent "must show, by a preponderance of the evidence, three things.  [First,] [t]he parent must show regular visitation and contact with the child . . . .  [Second,] the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship.  And [third,] the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home.  When the parent has met that burden, the parental-benefit exception applies such that it would not be in the best interest of the child to terminate parental rights, and the court should select a permanent plan other than adoption." (*In re Caden C.* (2021) 11 Cal.5th 614, 636-637 (*Caden C.*).)

Our review of the juvenile court's ruling on whether the parental-benefit exception applies incorporates two standards of review. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-641.)  We apply the substantial evidence standard to the first two elements of the exception and abuse of discretion to the third element. (*Ibid.*)

*Juvenile Court's Ruling*

Here, the juvenile court found mother had satisfied the first element but did not satisfy the second and third elements of the parental-benefit exception.  As the juvenile court explained:  "I think the mother has shown regular visitation and contact.  That's the first part of the exception for the beneficial relationship exception.  [¶]  The next question is whether she's established that the children have a substantial positive emotional attachment to [mother] . . . .  [¶]  [¶] [¶] . . . [I]t's really

5

difficult, based upon the evidence . . . , to find that these children have a substantial positive emotional attachment to . . . mother . . . . There's no doubt the visits have been pleasant, but that's not enough. [¶] . . . [E]ven if there was some kind of substantial positive emotional attachment, I still would have to determine whether that relationship is such that it's so significant to these children that it outweighs the need that they have or the benefits that they would realize by having a stable, permanent home that they could get with adoption . . . . And I don't think that the evidence of their relationship with their mother, for the most part arising out of pleasant visits, is more significant than the benefits they'll realize by having a stable, permanent home. [¶] So I don't think . . . mother has met her burden of showing that the exception applies, and so I am ordering adoption as the permanent plan."

*Substantial Evidence Supports the Juvenile Court's*
*Determination the Parental-Benefit Exception Did Not Apply*

There is no dispute that mother established the first element of the parental-benefit exception, that she maintained regular visits with the children. (*Caden C.*, *supra*, 11 Cal.5th at p. 632; § 366.26, subd. (c)(1)(B)(i).) However, there is no evidence in the record to establish the second two elements.

In determining whether the "'child would benefit from continuing the relationship,'" the focus is on the children. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The exception must be examined on a case-by-case basis, taking into account "a slew of factors" which affect a parent/child bond such as, "'[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Caden C.*, at p. 632,

6

quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).)

Here, mother's supervised visits with the children were generally "positive" and the "quality of the visits" were "consistently strong [and] adequate." The visits went well enough for mother to progress from supervised to monitored visits. Typically, the visits included a large number of mother's family members. Mother would bring the children food and toys. The children would hug and kiss her and call her "mama." But a parent who seeks to invoke the parental-benefit exception "must do more than demonstrate 'frequent and loving contact[,]' an emotional bond with the child, or that parent and child find their visits pleasant. Instead, the parent must show that he or she occupies a 'parental role' in the child's life." (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827, citations omitted; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.)

While the children appeared happy to see mother and enjoyed their visits with her, they did not have any difficulty separating from mother at the end of the visits. They did not cry, nor did they ask for additional visits. That is because mother did not occupy a parental role in their lives. Rather, she was more like a friendly visitor, which would not preclude terminating her parental rights. (See *Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) This is further supported by mother's own testimony during the section 366.26 hearing. When asked by her counsel, "What do you see as the benefits for these children?", mother replied that she "honestly . . . can't say anything, 'cause it's not me that's caring for them."

Moreover, since this dependency action began, the children have made great progress in their individualized therapy and

7

treatment services. For example, both R.S. and L.S. required placement in an ISFC home to address their heightened behavioral and health needs. R.S. is making improvements regulating and expressing his needs and emotions with his current treatment plan. L.S. is progressing in her development with speech therapy and other resources provided by her ISFC caregiver. R.L. is also receiving occupational therapy and physical therapy weekly and making positive progress.

Nevertheless, mother does not believe the agency's involvement is warranted. She also does not believe that she or the children need therapeutic services, despite the children having been assessed by professionals to have "significant needs" that require professional treatment. Mother's refusal to recognize the impact that her behavior and substance abuse have had on the children is relevant to the juvenile court's inquiry as to whether the children would "benefit from continuing the relationship and be harmed, on balance, by losing it." (See *Caden C., supra,* 11 Cal.5th at pp. 637-638.)

Finally, the children were very young when they were removed from mother's care in July 2020. R.S. was five years old, L.S. was two years old, and R.L. had never lived with mother. At the time of the section 366.26 hearing in July 2021, the children had already spent one year in protective custody. During that time, the children developed a "strong attachment" to their caregivers. This is evidenced by the children "smiling and seeking out [their caregivers] when they are hungry, tired, or when they need to be comforted after crying."

Substantial evidence supports the juvenile court's finding that mother did not satisfy her burden to show a "substantial,

positive, emotional attachment" such that the children would benefit from continuing the relationship.

*No Abuse of Discretion in Ruling that Mother Failed*
*to Establish the Third Element of the Parental-Benefit Exception*

"When [the juvenile court] weighs whether termination would be detrimental, . . . the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C., supra*, 11 Cal.5th at p. 634.) "'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[]' the child, the court should not terminate parental rights." (*Id.* at p. 633.)

The record supports that the children's well-being would greatly improve when permanently adopted by stable and fully attentive parents. When this dependency action was initiated, the children experienced multiple placements. For example, R.S. had four placements, some of which lasted a matter of days; L.S. had five placements; and R.L. had three placements. However, by the time the section 366.26 hearing occurred, the children had been in a stable placement with their current respective caregivers, who are also the prospective adoptive parents. The record shows the children are thriving with their caregivers who have given them "stability, consistency, adequate parenting and love." When children are this young, their "needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.) Indeed, the juvenile court stated, "[W]ith the many moves that these children have had, they definitely, as all children do, but these children in

9

particular need a home that they can say is their forever home that they're not going to have to leave."

Mother did not present any evidence that the children would be greatly harmed by the severance of parental rights, or that the security and stability of a new home would not outweigh the loss of that relationship. For example, she did not present a bonding study or other evidence to show that termination of parental rights would have a detrimental effect on the children's lives. Instead, she contends that she has been the only constant in the children's lives, and in particular, R.S.'s life. She asserts that her regular visits with the children and nightly phone calls to R.S. were of particular comfort during the children's multiple placements.

But the evidence in the record shows that mother has not maintained contact with either of the children's caretakers. Moreover, mother's nightly phone calls became sporadic and in February 2021, became "nil." Prior to the phone calls ending altogether, R.S. had begun to be "mean" to mother and was not interested in the phone calls. Even so, mother's regular visits and nightly phone calls with the children do not outweigh "the security and the sense of belonging a new family would confer." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

The juvenile court acted within its discretion in concluding that mother failed to show that severance of the parental relationship would "harm the [children] to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.)

Mother resists the juvenile court's finding and contends it improperly relied on her failure to complete her case plan as a reason to terminate parental rights. (See *Caden. C.*, *supra*, 11

10

Cal.5th at p. 634.) We disagree. The juvenile court's comments were made after its ruling and in the context of its observations on how difficult the decision to terminate mother's parental rights was in this case. After finding mother had not met her burden to show the exception applied and after finding the children adoptable, the juvenile court stated, "[A]nd I . . . just have to go back and say . . . when I get to this point in many cases, I am sad, I'm disappointed when we give parents a chance and . . . this case in particular, it's just hard for me to understand, because I think we made it clear what could happen if mom didn't do the things we asked her to do, and yet she made that choice. And I don't understand that. Especially given how she was consistent with her visits and clearly loves her children. But she chose not to do her case plan. And this is what happens."

*Guardianship or Long-Term Foster Care*

Mother next contends that a guardianship or long-term foster care, and not adoption, is the more appropriate option for the children. This contention fails because we have already determined mother did not meet her burden to establish the parental-benefit exception. Accordingly, the juvenile court correctly determined that adoption was the appropriate permanent plan for the children. (See *In re B.D.*, *supra,* 66 Cal.App.5th at p. 1224.)

DISPOSITION

The judgment (orders terminating parental rights and selecting adoption as the permanent plan) is affirmed.

11

<u>NOT TO BE PUBLISHED</u>.


                                                YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

Tari L. Cody, Judge
Superior Court County of Ventura

_____

Richard L. Knight, under appointment by the Court of Appeal, for Objector and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Petitioner and Respondent.